**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| BARRY LEVINE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| AMERICAN MENSA, LTD. and | ) | |
| JOHN DOES 1-5 | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMPLAINT**

Plaintiff Barry Levine, pursuant to Texas Civil Practice and Remedies Code Annotated Section 16.064 and within 60 days of the dismissal without prejudice of a similar action in the United States District Court for the Northern District of Georgia, Atlanta Division, files this his Complaint for defamation against Defendant American Mensa, Ltd. and John Does 1-5, as follows:

**I
Summary of Claim**

1.      This lawsuit arises from the efforts of Defendant the American Mensa, Ltd. organization to try to intimidate and silence its former member Plaintiff Mr. Barry Levine by falsely accusing Mr. Levine of engaging in criminal activity. As a result, Mr. Levine brings this action to recover for damages to his reputation inherent in American Mensa's defamatory remarks and exemplary damages to deter such reckless conduct by American Mensa in the future.

2.      Thus, Mensa is the world-renowned organization for high I.Q. individuals, with national Mensa organizations such as American Mensa in countries throughout the world. The Plaintiff Barry Levine, of Atlanta, Georgia, was a member of American Mensa for thirty years prior to being unjustly expelled in 2008. At that time, Mr. Levine was seeking to raise legitimate

concerns in the State of Georgia about the governance of American Mensa, by making other members, including members of American Mensa who were residents of the State of Georgia, aware of the conduct and actions of American Mensa officials that were in his view against the best interest of the American Mensa organization.  Those American Mensa officers thus needed him silenced.  To achieve this, beginning in 2005 and culminating in 2008 American Mensa breached its own well-established rules and regulations, as well as basic principles of due process, in order to unjustly remove Mr. Levine from the organization. Following two hearings held in the State of Georgia to expel him in 2005 and in 2008, Mr. Levine was denied an effective appeal of his expulsion to Mensa International or a listing on the International membership rolls.

3.     Despite this mistreatment, Mr. Levine maintained his ties and friendships with members of American Mensa, including members who were residents of the State of Georgia, that had been built up over his 30 years of membership and he has remained outspoken on issues relating to American Mensa governance. Mr. Levine continued his friendships by visiting with friends during American Mensa Annual Gatherings held throughout the United States. This continued contact and comments by Mr. Levine have been an anathema to the American Mensa leadership-a thorn in their side that served as a constant reminder of the heavy-handed treatment of Mr. Levine.

4.     Thus, American Mensa leadership developed a plan to discredit Mr. Levine with its membership, including American Mensa members who reside in the State of Georgia and the State of Texas, and to undermine his credibility.  American Mensa leadership has embarked on a concerted effort to defame Mr. Levine, to falsely represent him to the American Mensa

membership, including to American Mensa members who reside in the State of Georgia and the State of Texas, and to exclude Mr. Levine from any contact with American Mensa membership.

5.      The efforts by the leadership of American Mensa to ostracize Mr. Levine were continued in the time period leading up to and during the American Mensa Annual Gathering held at the J.W. Marriott Hotel in Indianapolis, Indiana during the week of July 4, 2018 (the "Annual Gathering").

6.      As was his usual practice, and unaware that he was being set up by American Mensa, Mr. Levine was a paying guest at the Indianapolis Marriott Hotel having checked in on the evening of July 3, 2018. Mr. Levine made no attempt to attend any American Mensa events or to participate in the Annual Gathering. Nevertheless, within hours of his arrival at the Marriott Hotel, as if prearranged, and before the Annual Gathering even began, American Mensa representatives, including National Chairwoman LaRae Bakerink and American Mensa Executive Director Trevor Mitchell, approached employees of the Marriott Hotel Security Department and falsely accused Mr. Levine of the crime of "harassing" and "stalking" American Mensa membership in attendance. Even though there was no basis for this scurrilous falsehood, the Marriott Hotel threatened to evict Mr. Levine from the hotel.

7.      In addition to the false accusations of stalking by Mr. Levine that American Mensa made to the Security Department of the Marriott Hotel at the 2018 Annual Gathering, American Mensa Chairwoman Bakerink has repeated this false charge of stalking to other members of American Mensa at large, including allegations of a repeated history of instances of stalking by Mr. Levine. This false charge by Chairwoman Bakerink has been repeated on a Mensa internet

discussion forum known as M-Pol which is available in the State of Georgia and the State of Texas to American Mensa members who reside in Georgia and in Texas.

8.      Defendant American Mensa and its authorized representatives falsely accused Mr. Levine of committing a specific crime punishable by law, the crime of stalking. These false accusations are defamatory per se and have given rise to these claims.

9.      In email messages of July 21, 2018 and August 9, 2018 to counsel for American Mensa, Mr. Levine denied that he had harassed or stalked any American Mensa official or members and made a timely and sufficient request for a  retraction from the defendant American Mensa of the false and defamatory statements that American Mensa had published concerning Mr. Levine at the July 2018 American Mensa Annual Gathering, including the accusation of stalking. American Mensa declined and refused to retract any of the statements that American Mensa had made about Mr. Levine.

10.      Mr. Levine originally filed a lawsuit asserting his claims for defamation against Defendant American Mensa and John Does 1-5 on June 28, 2019 in the Superior Court of Fulton County, Georgia within one year of the publication of the  alleged defamatory remarks by Defendant American Mensa at the  July 2018 American Mensa Annual Gathering. American Mensa removed that action to the United States District Court for the Northern District of Georgia on the basis of diversity jurisdiction, which District Court dismissed that action without prejudice for lack of personal jurisdiction on August 20, 2020. This action is filed within 60 days of that dismissal.

4

## II
## Parties, Jurisdiction, and Venue

11.     Plaintiff Barry Levine, a former dues-paying member of American Mensa, Ltd. associated with Mensa In Georgia, Inc., is an adult resident of Fulton County in the State of Georgia. Mr. Levine is a citizen of the State of Georgia.

12.     Defendant American Mensa, Ltd. ("American Mensa") is a not-for-profit corporation organized and existing under the laws of the State of New York.  American Mensa may be served with process through its registered agent for service of process, CT Corporation Systems, at its registered address, 111 Eighth Avenue, New York, Kings County, New York, 10011. American Mensa has its headquarters and principal place of business in Arlington, Texas. American Mensa is a citizen of the States of New York and Texas.

13.     John Does number 1 through 5 are individuals whose identities are unknown to Plaintiff at this time who participated on behalf of or along with American Mensa in publishing the false and defamatory accusations of criminal conduct by Mr. Levine.

14.     The Court has original jurisdiction of this action under 28 U.S.C. § 1332 in that it is a civil action between citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

15.     Venue in this Court is proper in this action pursuant to 28 U.S.C. §1391(b)(1) and 1391(c)(2), because Defendant American Mensa is a corporation that  resides in  the Northern District of Texas District and is subject to personal jurisdiction in this District.

### III
### Factual Background

16.     Mr. Levine was a member of American Mensa, Ltd. from 1979 until 2008. For most of this time period his local group was Mensa In Georgia, Inc. Mr. Levine served as an officer of Mensa In Georgia and received the Mensa In Georgia Lifetime Service Award in 1995. As a member of American Mensa, Mr. Levine paid annual dues and participated in American Mensa activities in Georgia and nationally. In exchange for his membership dues, Mr. Levine received benefits and services in Georgia from American Mensa such as a monthly national publication and in more recent years access to an American Mensa interactive internet website and online internet forums.

17.     As described above, to silence his expression of concerns about the leadership of American Mensa, Mr. Levine was wrongfully expelled from American Mensa membership in 2008. The conduct which Mr. Levine engaged in which lead to his expulsion, including attendance at American Mensa meetings in Georgia, took place in the State of Georgia. The process of expelling Mr. Levine from membership in American Mensa in 2008 included two hearings held by American Mensa in Atlanta, Georgia first in 2005 and then in 2008. Since that time Mr. Levine has been unfairly denied readmission to membership in American Mensa and the leadership of American Mensa has sought to defame and silence him.

18.     The following are examples of that organizational defamation of Mr. Levine by American Mensa within the twelve months prior to June 28,2019.

**American Mensa's False Accusations of Criminal Behavior by Mr. Levine at the 2018 Annual Gathering**

19.     As described above, during the week of July 4, 2018, the J.W. Marriott Hotel in Indianapolis, Indiana was the site of the 2018 American Mensa Annual Gathering, the American Mensa annual convention.  As he had done for many years, Mr. Levine booked a room at the Marriott Hotel to be able to visit in the hotel's common areas with friends, old and new. While the American Mensa leadership has no ability to exclude Mr. Levine from the hotel, they sought to enlist the Marriott Hotel to banish Mr. Levine from the hotel.  And to do that, several officers and staff of American Mensa needed to lie about Mr. Levine to the hotel staff.

20.     In furtherance of this prearranged plan, on June 27, 2018, a week before the Annual Gathering, American Mensa's Meeting & Event Planner , a Ms. Paige Faulkner, sent an email to Ms. Lisette Woloszyk,  the Senior Event Manager of the Marriott Hotel in Indianapolis alerting the hotel that Mr. Levine had a room booked at the hotel and that Mr. Levine "…is persona non gratae at the Mensa Annual Gathering as he has been removed from membership. You'll probably want to share this with your security team."   This email to the hotel, which was sent by Mrs. Faulkner from her office at the American Mensa headquarters in Arlington, Texas, is attached to this Complaint as Exhibit 1 and is incorporated herein. Thus, before Mr. Levine even left his home in Georgia to be present at the Annual Gathering in Indianapolis, American Mensa set in motion a plan to make accusations against Mr. Levine. These actions by American Mensa were based on the long-running dispute with Mr. Levine that stemmed from his removal from membership in American Mensa years before based on his conduct in Georgia and after a set of hearings conducted in Georgia.

21.     Then, on Wednesday, July 4, 2018, soon after Mr. Levine arrived and before the American Mensa convention even started, two security personnel from the Marriott Hotel came to

Mr. Levine's room and announced to Mr. Levine that they had been informed that Mr. Levine had been "harassing" their "guests," and that if they got another complaint he would be evicted from the hotel.  This accusation by the Marriott Hotel security personnel was quite a surprise to Mr. Levine, since he had just arrived the night before and had not harassed anyone. The only recognizable American Mensa person Mr. Levine had even seen at the Marriott Hotel were chance encounters with American Mensa Chairwoman LaRae Bakerink.  Mr. Levine had only made brief, polite remarks to her in passing. Mr. Levine did not approach, threaten or confront Chairwoman Bakerink in any way. Therefore, Mr. Levine inquired of the Marriott Hotel security personnel if there had been complaints from "Guests? Multiple guests?" and he was told "Yes," that the complaints of purported harassment came from multiple guests. Mr. Levine then asked the Marriott Hotel security personnel to identify who had made the complaints and how he had supposedly harassed these guests. The Marriott Hotel security personnel informed Mr. Levine that they were not at liberty to provide that information for the "privacy of their guests."

22.     Within the hour, Mr. Levine was speaking with Mr. Rob Lynam, the Manager of the Marriott Hotel, who confirmed that five or six officers or staff members of American Mensa came to the hotel staff and declared that Mr. Barry Levine has been harassing their hotel guests. Mr. Levine subsequently confirmed with the Marriott Hotel's Director of Loss Prevention, a Mr. Stan Shultz, that five (or maybe six) officers or staff of American Mensa had accused Mr. Levine of harassing hotel guests, presumably Mensa members.

23.     Mr. Levine has subsequently learned, from a letter dated July 20, 2018 from counsel for American Mensa, that the American Mensa officials that made the false accusation of harassment against Mr. Levine included American Mensa Chairwoman LaRae Bakerink and

American Mensa Executive Director Trevor Mitchell. Thus, American Mensa counsel admitted to Mr. Levine that "Mr. Mitchell and Mrs. Bakerink met with hotel security to make security aware of the situation."  Mr. Levine also learned from that letter from American Mensa counsel that Chairwoman Bakerink and Executive Director Mitchell had accused Mr. Levine of "stalking."

24.     In addition and just prior to the false accusations of stalking by Mr. Levine made to the Marriott Hotel by American Mensa Chairwoman LaRae Bakerink and American Mensa Executive Director Trevor Mitchell, earlier in the morning of  July 4, 2018 the American Mensa Meeting & Event Planner Paige Faulkner sent another email message to the Marriott Hotel in which she also falsely accused Mr. Levine of verbally abusing multiple members of American Mensa. Thus, on behalf of American Mensa, and with the authority and direction of American Mensa Chairwoman, LaRae Bakerink and Executive Director Trevor Mitchell, Ms. Faulkner published to personnel of the JW Marriott Hotel in Indianapolis that: "Barry Levine the ex member that we alerted you to has arrived. I'm hearing that he's been verbally abusing some of our members and mainly our Chair LaRae Bakerink.  Will you alert loss prevention just to given them a heads up." A true and correct copy of that July 4, 2018 email from Ms. Faulkner of American Mensa is attached to this Complaint as Exhibit 2 and is incorporated herein.  A subsequent internal email from Mr. Robert Lynam, one of the Managers of the JW Marriott Hotel, refers to a warning given by the hotel to Mr. Levine "…to stop harassing the Mensa Staff…" and that "…he [Mr. Levine] would be evicted if there were any further complaints."

25.     These false accusations against Mr. Levine by American Mensa officials and staff were an attempt to have Mr. Levine thrown out of the Marriott Hotel, where he was a paying guest, so that he could not exercise his right of association with his friends and colleagues. Furthermore,

Mr. Levine's reputation is now and forever besmirched with a major international hotel chain as a person who harasses and stalks guests.

26.     American Mensa members who are residents of the State of Georgia were in attendance at the July 2018 American Mensa Annual Gathering in Indianapolis. On information and belief, these American Mensa members who are residents of the State of Georgia, and other residents of Georgia, became aware of the false accusations of harassment and stalking against Mr. Levine by American Mensa to the Marriott Hotel.

27.     Under Indiana law—the law of the state in which the defamatory statements were made—the crime of "stalking" is defined to include repeated or continuing harassment, and is punishable as a felony.  IND. CODE ANN. § 35-45-10-1 *et seq.* (West 2020).

28.     Specifically, under Indiana law, "stalking" includes harassment:

> Sec. 1 . As used in this chapter, "stalk" means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity.

*Id.*

29.     "Harassment" is defined in the very next section:

> Sec. 2 . As used in this chapter, "harassment" means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress.  Harassment does not include statutorily or constitutionally protected activity, such as lawful picketing pursuant to labor disputes or lawful employer-related activities pursuant to labor disputes.

*Id.* at § 35-45-10-2.

30.     Section 5 of the statute then provides that "[a] person who stalks another person commits stalking, a Level 6 felony." *Id.* at § 35-45-10-5.

31.     Mr. Levine neither harassed nor stalked any person. Nevertheless, in an effort to get the Marriott staff to eject him from the room he paid for, and in order to prevent Mr. Levine from maintaining the relationships he had and still has with many members of Mensa, Defendants accused Mr. Levine of this crime. It is defamation *per se* to falsely accuse a person of a crime in all relevant jurisdiction, including Texas, where this matter is being adjudicated; Georgia, where Mr. Levine resides; and Indiana, where the defamation took place. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018), *reh'g denied* (Sept. 28, 2018), *cert. denied*, 139 S. Ct. 1216, 203 L. Ed. 2d 208 (2019) (listing statements that constitute defamation *per se*, including "accusing someone of a crime"); *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 187 (Ind. 2010) (statements imputing criminal conduct, provided they do not require resort to extrinsic evidence, qualify as defamation *per se*); *Cottrell v. Smith*, 299 Ga. 517, 524, 788 S.E.2d 772, 781 (2016), *adopted*, (Ga. Super. 2016) (listing "imputing to another a crime punishable by law" as one of the categories of defamation *per se*).

32.     As the Chairwomen of American Mensa, Ms. Bakerink had the direction and control of American Mensa and was authorized to act on behalf of American Mensa and was acting on behalf of American Mensa when she falsely accused, and caused others to falsely accuse, Mr. Levine of harassment to the Marriott Hotel Security Department. Chairwoman Bakerink expressly directed others, including American Mensa Executive Director Mr. Trevor Mitchell, to make the false accusation of harassment by Mr. Levine to the Marriott Hotel Security Department.

33.     As the Executive Director of American Mensa, Mr. Trevor Mitchell had the direction and control of American Mensa and was authorized to act on behalf of American Mensa and was acting on behalf of American Mensa when he falsely accused Mr. Levine of harassment to the Marriott Hotel Security Department.

34.     Other officials or staff of American Mensa, including Meeting & Event Planner Paige Faulkner and John Does 1-5, who also falsely accused Mr. Levine of harassment, were likewise expressly directed and authorized by American Mensa to make these false accusations.

35.     The false accusations of harassment and stalking against Mr. Levine by American Mensa to the Marriott Hotel at the Annual Gathering were not made with a good faith intent to protect any legitimate interest of American Mensa, Chairwoman Bakerink or any other American Mensa officers or members, but instead were a cloak for the purpose of venting their private malice toward Mr. Levine. Even if, however, these accusations were fabricated to alleviate the annoyance caused to Ms. Bakerink, Mr. Mitchell, or Ms. Faulkner by Mr. Levine's mere presence and continued relationships with American Mensa members, Defendants had no privilege or right to accuse Mr. Levine of harassment and stalking, terms with express criminal meanings.

36.     The false accusations of harassment and stalking against Mr. Levine were not made by American Mensa out of any bona fide concern but were instead a pretext for American Mensa trying to exclude Mr. Levine as a paying patron at the Marriott Hotel.

**Subsequent Repetition of the False Charge of Stalking by Chairwoman Bakerink.**

37.     Subsequent communications on the international Mensa internet discussion forum M-Pol, which has over 300 participants made up of current and former American Mensa and International Mensa members, including residents of the State of Georgia and the State of Texas,

confirm that American Mensa Chairwoman Bakerink had repeated and republished the false accusation of stalking against Mr. Levine to one or more rank and file American Mensa members. Thus, on April 24-25, 2019, American Mensa member Ed Lomas, who holds no office or position of responsibility with American Mensa, posted the following comments disclosing what he had been told by Chairwoman Bakerink:

> *Ed Lomas:*
>
> I heard LaRae's version of the event, and it isn't at all like Barry's version. She mentioned some incidents to me several months ago, and I believe that Barry was intentionally stalking and harassing her. ….
>
> *Barry Levine:*
>
> So, the Chairman of American Mensa, LaRae Bakerink, asserted and convinced you, Ed, that I was "intentionally stalking" her. Thank you, Ed, for making that crystal clear.
>
> *Ed Lomas:*
>
> **My belief is that you were stalking her, and it's based on what she [Bakerink] told me of your actions** and your lengthy story to explain a series of improbable events. …

These postings were available online in the State of Georgia, including in Fulton County, Georgia and in the Northern District of Georgia and in the State of Texas.

38.     Mr. Levine has an unblemished reputation as a law-abiding citizen. He is a decorated U.S Army Vietnam Veteran. Mr. Levine has no criminal record and has never been charged or convicted of any crime. More specifically, he has never been charged with stalking, assault or harassment of any type. Thus, the false accusations of commission of a crime are especially harmful and hurtful to Mr. Levine's reputation. The reputational harm to Mr. Levine is

13

inherent in American Mensa's false accusations of criminal behavior. The brunt of the harm to Mr. Levine from these false accusations has occurred and been suffered by Mr. Levine in the State of Georgia where he resides.

39.     The dispute which culminated in the false accusations of stalking against Mr. Levine at the Mensa Annual Gathering in Indianapolis, Indiana in July 2018 directly grew out of the wrongful termination of Mr. Levine's American Mensa membership in 2008, because of Mr. Levine's conduct in Georgia, and the two hearings that were held in Atlanta, Georgia in 2005 and 2008 regarding that expulsion from membership. While the current accusation against Mr. Levine was focused on his attendance at the July 2018 Mensa Annual Gathering in Indianapolis, Indiana, the controversy between Mr. Levine and American Mensa emanates from Georgia. Several American Mensa members from Georgia were in attendance at the Marriot Hotel in Indianapolis at the 2018 Annual Gathering. The injury to Mr. Levine's reputation occurred in Georgia. As to the internet accusations against Mr. Levine by American Mensa Chairwomen Bakerink, they were published on the American Mensa internet discussion forum known as  M-Pol, which is available to American Mensa members in Georgia and in Texas and on which American Mensa members who are residents of the State of Georgia participate . On information and belief, American Mensa members who are residents of the State of Texas also participate on this internet discussion forum.

**IV**
**Causes of Action**

**Count One: Defamation (Slander)**

40.     Plaintiff realleges the allegations of paragraphs 1 through 39 above.

14

41.     In Texas, the elements of the tort of defamation include: (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *In re Lipsky* , 460 S.W.3d 579, 593 (Tex. 2015 ). With regard to fault of the defendant, a private individual need only prove negligence. *In re Lipsky* , 460 S.W.3d 579, 593 (Tex. 2015 ). A false statement that charges a person with a crime is defamatory per se as the law presumes that such a statement defames a person and injures his reputation. *Infra*, ¶ 31; *see also Leyendecker & Assocs., Inc. v. Wechter* , 683 S.W.2d 369, 374 (Tex. 1984); *Charalambopoulos v. Grammar*, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015) (Fitzwater, J.) pages 36-37.

42.     Slander is oral defamation. *Diaz v. Rankin*, 777 S.W.2d 496, 498 (Tex. App.— Corpus Christi 1989).

43.     As alleged above, on or about July 3 and July 4, 2018, Defendant American Mensa, through its authorized representatives and with the express authority and direction of American Mensa, made statements to the employees of the JW Marriott Hotel in Indianapolis, Indiana that imputed to Mr. Levine a crime punishable by law by falsely accusing Mr. Levine of harassment and "stalking." These accusations were false and defamatory *per se* and were made negligently and without any privilege or justification.

44.     On or after July 3, 2018, American Mensa, through its Chairwoman LaRae Bakerink, intentionally repeated and republished this false charge of stalking by Mr. Levine to other members of American Mensa at large, including allegations of a repeated history of instances of stalking by Mr. Levine. Evidence of this false charge by Chairwoman Bakerink has been repeated on the Mensa international internet forum M-Pol. These false statements by Chairwoman

Bakerink were not for any proper purpose, were not on a proper occasion, and were not limited to any control group or leadership of American Mensa.

45.     Defendant American Mensa intentionally and maliciously published these false, slanderous and defamatory *per se* statements about Mr. Levine, or in the alternative, the false statements were published with such want of care as to be made with gross negligence. The defamatory statements by American Mensa about Mr. Levine were not made in the exercise of any privilege, but instead were published by American Mensa to vent private malice against Mr. Levine and were not bona fide in the promotion of the object of any privilege.

46.     These statements made and published by American Mensa were false in that Mr. Levine did not engage in any harassment or stalking of any American Mensa members or any other guests at the Marriott Hotel at the American Mensa 2018 Annual Gathering or at any other time. These statements were defamatory per se, because they accused Mr. Levine of committing a crime.

47.     The publication of these false statements by American Mensa  have damaged Mr. Levine's good name and reputation and have exposed Mr. Levine to embarrassment, distress, public hatred, ridicule and contempt. These false accusations impeached Mr. Levine's honesty, integrity, virtue, and reputation.

48.     The geographic area in which Mr. Levine has suffered this damage to his reputation includes where he lives in Fulton County, Georgia in the Northern District of Georgia and in the State of Texas.

49.     By these defamatory statements, American Mensa engaged in intentional conduct that was calculated to cause injury to Mr. Levine in his home State of Georgia, and elsewhere, and the brunt of the harm and injury to Mr. Levine's reputation is incurred by Mr. Levine in Georgia.

16

These defamatory statements were made by American Mensa so that Mr. Levine would suffer injury to his reputation in the State of Georgia, including among American Mensa members who are residents of the State of Georgia. The harm to his reputation has caused Mr. Levine embarrassment and humiliation where he resides. As part of American Mensa's scheme to intimidate Mr. Levine and to discourage him from participating in American Mensa Annual Gatherings, when it published these defamatory remarks about Mr. Levine, American Mensa knew that Mr. Levine would suffer harm to his reputation in the State of Georgia and intended him to suffer such harm in the State of Georgia. Thus, American Mensa committed a tortious injury in Georgia.

50.     Wherefore Mr. Levine demands damages against American Mensa and the John Doe defendants for slander in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000).

51.     The conduct of American Mensa and the John Doe defendants as alleged in this Complaint showed willful misconduct, malice, gross negligence or that entire want of care which would raise the presumption of conscious indifference to the consequences by American Mensa and the other defendants and with the intent to cause harm to Mr. Levine so as to entitle Mr. Levine to an award of exemplary or punitive damages against American Mensa in accordance with Section 41.003 of the Texas Civil Practice & Remedies Code. Therefore, to punish, penalize and deter American Mensa from engaging in similar conduct in the future, Mr. Levine prays for an award of exemplary damages in an amount to be determined by the trier of fact in this case, but not less than Five Million Dollars ($5,000,000).

17

## Count Two: Defamation (Libel)

52.     Plaintiff realleges the allegations of paragraphs 1 through 51 above.

53.     Section 73.001 of the Texas Civil Practice & Remedies defines libel:

> A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

54.     As alleged above, on or about July 4, 2018, Defendant American Mensa, through its authorized representatives and with the express authority and direction of American Mensa, published written statements to the employees of the Marriott Hotel in Indianapolis, Indiana that imputed to Mr. Levine a crime punishable by law by falsely accusing Mr. Levine of harassing Mensa Members in attendance at the Annual Gathering. These accusations were false and defamatory *per se* and were made negligently and without any privilege or justification. These accusations injured Mr. Levine's reputation and thereby exposed Mr. Levine to public hatred, contempt or ridicule, and  impeached Mr. Levine's honesty, integrity, virtue, and reputation.

55.     On or after July 3, 2018, American Mensa, through its Chairwoman LaRae Bakerink, repeated and republished this false charge of stalking by Mr. Levine to other members of American Mensa at large, including allegations of a repeated history of instances of stalking by Mr. Levine. Evidence of this false charge by Chairwoman Bakerink has been repeated on the Mensa international internet forum M-Pol. These false statements by Chairwoman Bakerink were not for any proper purpose, were not on a proper occasion, and were not limited to any control group or leadership of American Mensa.

56.    Defendant American Mensa intentionally and maliciously published these false and defamatory statements about Mr. Levine.

57.    These written statements published by American Mensa were false in that Mr. Levine did not engage in any harassment or stalking of any American Mensa members or any other guests at the JW Marriott Hotel at the American Mensa 2018 Annual Gathering or at any other time. These statements were defamatory *per se* because they accused Mr. Levine of committing a crime.

58.    The publication of these false statements have damaged Mr. Levine's good name and reputation and have exposed Mr. Levine to embarrassment, distress, public hatred, ridicule and contempt. These false accusations impeached Mr. Levine's honesty, integrity, virtue, and reputation. By these defamatory written statements, American Mensa engaged in intentional conduct that was calculated to cause injury to Mr. Levine in his home State of Georgia, and the brunt of the harm and injury to Mr. Levine's reputation is incurred by Mr. Levine in Georgia. These defamatory statements were made by American Mensa so that Mr. Levine would suffer injury to his reputation in the State of Georgia, including among American Mensa members who are residents of the State of Georgia. The harm to his reputation has caused Mr. Levine embarrassment and humiliation where he resides. As part of American Mensa's scheme to intimidate Mr. Levine and to discourage him from participating in American Mensa Annual Gatherings, when it published these defamatory remarks about Mr. Levine, American Mensa knew that Mr. Levine would suffer harm to his reputation in the State of Georgia, the State of Texas, the State of Indiana, and in any other place the statements might come to be viewed as a result of their

dissemination on the internet. American Mensa intended this harm, in all of these locations. Thus, American Mensa committed tortious injuries in Georgia, Texas, and Indiana.

59.     Wherefore Mr. Levine demands damages against American Mensa and the John Doe defendants for libel in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000).

60.     The conduct of American Mensa and the John Doe defendants as alleged in this Complaint showed willful misconduct, malice, gross negligence or that entire want of care which would raise the presumption of conscious indifference to the consequences by American Mensa and the other defendants and with the intent to cause harm to Mr. Levine so as to entitle Mr. Levine to an award of exemplary or punitive damages against American Mensa in accordance with Section 41.003 of the Texas Civil Practice & Remedies Code. Therefore, to punish, penalize and deter American Mensa from engaging in similar conduct in the future, Mr. Levine prays for an award of exemplary or punitive damages in an amount to be determined by the trier of fact in this case, but not less than Five Million Dollars ($5,000,000).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mr. Barry Levine requests that this Court:

(a)     grant judgment in favor of Plaintiff and against Defendants on this Complaint and on each of Plaintiff's claims for defamation;

(b)     award Plaintiff actual, general, inferred, presumed, consequential, and compensatory damages for defamation;

(c)     award Plaintiff exemplary damages;

(d)     assess all costs, including reasonable attorneys' fees, against Defendants;

(e)  permit a trial by jury for all triable issues; and

(f)  grant Plaintiff such additional legal or equitable relief to which he may be entitled.

This 12th day of October 2020.

*/s/ John P. Atkins*
John P. Atkins
Texas Bar No. 24097326
Thompson Coburn LLP
2100 Ross Avenue, Suite 600
Dallas, Texas 75201
jatkins@thompsoncoburn.com
P: 972.629.7119-Office
F: 972.629.7171– Facsimile
M: 503.523.8247

*/s/Alan E. Lubel*
Alan E. Lubel (Pro Hac Vice application pending)
Georgia Bar No. 460625
LAW OFFICE OF ALAN E. LUBEL, P.C.
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
(404) 917-1080 – Office
(404) 233-1943 – Facsimile
alubel@lubellaw.com

*Attorneys For Plaintiff Mr. Barry Levine*